UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEMALE TYLER,

                     Plaintiff,                   No. 10-cv-13782
                                                          Hon. Gerald E. Rosen
vs.

PACIFIC INDEMNITY COMPANY,

                     Defendant.
_____/

**OPINION AND ORDER REGARDING THE PARTIES'
MOTIONS FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

This case centers on a dispute over insurance coverage between Gemale Tyler ("Tyler") and his insurance company, Pacific Indemnity Company ("Pacific"). Pacific has moved for partial summary judgment on two issues: (1) whether Tyler is entitled to the first $260,000 of his insurance policy for the value of the home destroyed by fire; and (2) whether Pacific may prorate its liability on the basis of other insurance covering the same property. Tyler has also requested summary judgment in his favor as to the first $260,000 in insurance proceeds, though without formally filing a motion. The Court will nevertheless treat Tyler's request -- included in his response brief -- as a motion for partial summary judgment. Having reviewed the parties' briefs and the record, the Court finds that the pertinent allegations and legal arguments are sufficiently addressed in these materials and that oral argument would not assist in the resolution of this motion.

Accordingly, the Court will decide Defendant's motion "on the briefs." *See* L.R. 7.1(f)(2). The Court's opinion and order is set forth below.

## II. FACTUAL BACKGROUND

On March 7, 2008, Tyler entered into a land contract with Cheyenne Usewick to purchase a piece of property that Mrs. Usewick and her husband had obtained days earlier for $162,000. The Usewicks bought the property "as is" because the house on the property was in a deteriorated state as a result of prior fire and water damage. Despite the property's poor condition, Tyler contracted with Mrs. Usewick to purchase it for $290,000.

In lieu of a $30,000 down payment, Tyler agreed to undertake the repairs needed throughout the house. The contract gave Tyler ninety days to complete the necessary repairs. If Tyler failed to do so, the contract allowed Mrs. Usewick to reclaim the property, including the value of any repairs already completed. The contract specifically provides that "[t]he purchaser has the first 90 days to complete repairs and agree[s] that if repairs are not complete and monthly payment has not been made, the purchaser agrees to give up the property and all rights to any money invested in the property . . . ." Tyler did not complete the requisite repairs within the ninety-day window provided under the land contract. Nevertheless, the Usewicks elected against exercising their power to reclaim the property. The remaining balance on the contract -- $260,000 -- was established as a single balloon payment due two years from the execution of the contract. In the interim, Tyler would make interest-only payments.

Prior to contracting with Tyler, Mrs. Usewick had obtained an insurance policy covering her interest in the property. The land contract, however, also required Tyler to insure the property against loss. Tyler procured an insurance policy in his name from Pacific. In the event of a loss, the Tyler-Usewick land contract contained the following provision allocating insurance proceeds between Tyler and Mrs. Usewick ("the allocation clause"):

> In case of loss or damage as a result of which insurance proceeds in paragraph 2(d), above, are available, the Purchaser may, within 60 days of said loss or damage, give to the Seller written notice of Purchaser's election to repair or rebuild the damaged parts of the premises, in which event said insurance proceeds shall be used for such purpose. The balance of said proceeds, if any, which remains after completion of said repairing or rebuilding, or all of said insurance proceeds if the Purchaser elects not to repair or rebuild, shall be applied first toward the satisfaction of any existing defaults under the terms of this contract and then as a prepayment upon the principal balance owing, and without penalty, notwithstanding other terms of this contract to the contrary. . . . Any surplus of said proceeds in excess of the balance owing hereon shall be paid to the Purchaser.

A fire occurred at the house on November 5, 2008, severely damaging the premises. After the fire, Tyler made no further repairs or payments, moved in with his fiancée at the home of his fiancée's mother, and elected to not rebuild the house. Davison Township demolished the home, and Mrs. Usewick eventually served a forfeiture notice on Tyler in early March 2009. On August 12, 2009, a consent judgment was entered forfeiting the property to Mrs. Usewick unless Tyler timely cured his deficiency. Tyler made no attempt to remit the amount owed, and Mrs. Usewick reclaimed the property.

Tyler filed a claim with Pacific for the loss of the home and its contents. Pacific denied Tyler's claim in October 2010, citing concealment and misrepresentation regarding Tyler's claim, the land contract, payments made on the contract, and the Tyler-Usewick relationship. Pacific does not dispute that fire losses are ostensibly covered by the policy; they instead rely on Tyler's alleged concealment and misrepresentation to void the insurance policy per its terms. The insurance policy states that "[t]his policy is void if you or any covered person has intentionally concealed or misrepresented any material fact relating to this policy before or after a loss."

Tyler filed suit on August 16, 2010, alleging breach of contract and a violation of the Michigan Uniform Trade Practices Act. The case was removed to this Court on September 22, 2010. On October 8, 2010, Pacific answered Tyler's complaint and asserted a counterclaim for $20,000 that Pacific advanced to Tyler immediately following the fire. The instant motion for partial summary judgment was filed on July 15, 2011. Pacific and Tyler each seek summary judgment on Tyler's entitlement to the first $260,000 of coverage. Pacific also seeks summary judgment regarding its right to prorate coverage under the terms of the insurance contract.

### III. ANALYSIS

**A.     Applicable Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the [Court] of the basis for its motion, and identifying those

4

portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks and citations omitted).

In deciding a motion brought under Rule 56, the Court views the evidence in the light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Yet, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(A)-(B). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B.     Summary Judgment is Not Appropriate Regarding the First $260,000 of Coverage Under the Insurance Contract.**

Tyler and Pacific each seek summary judgment regarding Tyler's entitlement to the first $260,000 of insurance coverage. Tyler argues that he had an insurable interest in the property the moment the land contract was executed. Having insured the property, Tyler claims he is entitled to the indemnity for which he paid premiums. Pacific, on the other hand, claims that any interest Tyler had dissipated when Mrs. Usewick reclaimed the property by forfeiture, thereby extinguishing Tyler's debt under the land contract. As

5

explained below, summary judgment in either party's favor is not appropriate because critical questions regarding the propriety of Pacific's denial of the claim remain unanswered.

Contracts must be read as a whole, with meaning given to all terms. *Singer v. Am. States Ins.*, 631 N.W.2d 34, 37 (Mich. Ct. App. 2001) (citing *Auto Owners Ins. Co. v. Churchman*, 489 N.W.2d 431 (Mich. 1992)). "The language of the contract is to be given its ordinary, plain meaning and technical, constrained constructions should be avoided." *Id.* Accordingly, where the parties have agreed upon unambiguous terms, the Court will enforce the agreement as written.

Here, both parties offer conflicting accounts of how the allocation clause in the land contract operates. Tyler claims he is entitled to the $260,000 originally due under the land contract, while Pacific claims that Tyler's interest was extinguished after Tyler elected against rebuilding and Mrs. Usewick reclaimed the property. Both arguments miss the point, however, since the parties fail to appreciate the significance of the allocation clause's conditional language, which states "In case of loss or damage <u>as a result of which insurance proceeds in paragraph 2(d), above, are available</u> . . . ." (Def.'s Mot. for Partial Summ. J. Ex. 5 at 3) (emphasis added.)[1] This language clearly limits the application of the entire clause to situations where "insurance proceeds . . . are

---

[1] Paragraph 2(d) is the land contract provision requiring Tyler to insure the property.

available[.]" (*Id.*)  Since Pacific denied Tyler's claim, no insurance proceeds are presently "available,"[2] thereby precluding the operation of the allocation clause.

Pacific's denial of Tyler's claim forms the crux of this lawsuit.  Whether the denial was proper will shape what relief, if any, Tyler is entitled to.  If Pacific was within its rights when it denied Tyler's claim, then no insurance proceeds will ever be available.  However, if Tyler prevails, then insurance proceeds will become available, and the allocation clause may impact how those proceeds are distributed.[3]  Neither party requested summary judgment on the propriety of Pacific denying Tyler's claim, thus neither party briefed the issue or presented evidence on point.  As such, the Court will not reach the issue of whether Pacific properly denied Tyler's claim.  Since the propriety of the denial remains unresolved, the Court is unable to determine whether funds are "available" and thus whether Tyler is entitled to the first $260,000 of insurance coverage

---

[2] The Court notes that, as part of its interpretive task, the term "available" in the above-quoted language is reasonably capable of more than one meaning.  "Available" could refer to the actual, direct availability of funds -- *i.e.*, funds in fact paid out by Pacific -- or the term could refer to available funds in the sense of a covered loss -- *i.e.*, funds are available when the insurance policy covers the loss that occurred.  The Court need not determine which meaning to ascribe to the term, however, because the outcome is the same regardless of which definition is used.  Funds are not "available" in the first sense because Pacific denied Tyler's claim and thus has not paid out any money beyond the $20,000 initially advanced in good faith.  Funds are also not "available" in the second sense because Pacific claims Tyler concealed or misrepresented material facts, thereby voiding the insurance contract and rendering the fire a loss not covered by Pacific's policy.

[3] Pacific's claim denial and summary judgment brief intimate that the Tyler-Usewick land contract may have been executed with the intent of furthering insurance fraud.  (Def.'s Mot. for Partial Summ. J. 11.)  Such a scheme, if established, would impact the validity of the entire contract.  *See Maids Intern., Inc. v. Saunders, Inc.*, 569 N.W.2d 857, 858 (Mich. Ct. App. 1997) ("contracts founded on acts prohibited by a statute, or contracts in violation of public policy, are void").

as a matter of law. Fed. R. Civ. P. 56(a). Accordingly, the Court will deny summary judgment.

C.     **Pacific May Not Prorate Its Coverage of the Insured Property**

In addition to seeking summary judgment regarding the first $260,000 in coverage, Pacific also seeks summary judgment regarding its ability to prorate coverage of the insured property. To support its position, Pacific relies on an "Other Insurance" clause in the policy that provides as follows: "When other property insurance applies to a covered loss, we will pay only the portion of the loss that our amount of coverage bears to the total amount of insurance covering the loss[.]" (Def.'s Countercl., Ex. A at Y-4.) Because Mrs. Usewick had her own insurance policy for the property Tyler was engaged to buy, Pacific claims that any coverage should be prorated in proportion to the total coverage available.

Other insurance provisions such as the one relied upon by Pacific are not unusual. They are generally "inserted in insurance policies to vary or limit the insurer's liability when additional insurance coverage can be established to cover the same loss." *St. Paul Fire & Marine Ins. Co. v. Am. Home Assur. Co.*, 514 N.W.2d 113, 115 (Mich. 1994). However, such clauses only operate in specific circumstances: they apply only when the other insurance policies cover the same interest in the same property. *J.D.'s Pub & Grub, Inc. v. N. Pointe Ins. Co.*, 2006 WL 2271306, at *3 (Mich. Ct. App. 2006). Pacific claims otherwise: that the other insurance clause applies whenever more than one policy covers the same property. However, this argument has been explicitly rejected by Michigan courts. *See id.* ("We also reject defendant's assertion that the 'other insurance

8

clause' applies here because both policies covered the same property."). Accordingly, the other insurance clause only allows prorated coverage if the applicable insurance policies cover the same interests in the same property. *See Lubetsky v. Standard Fire Ins. Co.*, 187 N.W. 260, 260 (Mich. 1922) (holding that other insurance clauses only apply "to cases where the insurance covers the same interests"); *J.D.'s Pub & Grub, Inc. v. N. Pointe Ins. Co.*, 2006 WL 2271306, at *3 (Mich. Ct. App. 2006).

Pacific does not dispute that Tyler and Mrs. Usewick have different interests in the property, even if their insurance policies covered the same parcel of property. Additionally, Michigan precedent clearly establishes that "[t]he vendor and the vendee, respectively, in a land contract have separate and distinct insurable interests." *McCoy v. Continental Ins. Co.*, 40 N.W.2d 146, 149 (Mich. 1949) (citations omitted) (quoted in *J.D.'s Pub & Grub, Inc. v. N. Pointe Ins. Co.*, 2006 WL 2271306, at *3 (Mich. Ct. App. 2006)). Here, as in *McCoy*, "the policies were on the same property and against the same risks[,] but on different interests and payable to different parties[.]" *Id.* As such, the other insurance clause does not apply, and Pacific is not entitled to prorate any liability it is ultimately found to bear. While Tyler did not request summary judgment on point, Rule 56 empowers the Court to grant summary judgment on grounds not raised by a party. Fed. R. Civ. P. 56(f)(2). Further, as explained above, there are no disputes of fact, and Tyler is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Therefore, summary judgment against Pacific is appropriate regarding the proration of coverage.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court holds that neither party is entitled to summary judgment regarding the first $260,000 in insurance coverage. The Court also holds that Tyler is entitled to summary judgment regarding the proration of coverage under Pacific's insurance policy. Therefore,

IT IS HEREBY ORDERED that Plaintiff's motion for partial summary judgment [Dkt. # 22] is DENIED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: February 1, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 1, 2012, by electronic and/or ordinary mail.

s/Ruth A. Gunther
Case Manager